# IN THE SUPREME COURT OF IOWA

No. 17–0202

Filed June 15, 2018

**JOSEPH WALSH,**

      Appellant,

vs.

**TERESA WAHLERT** and **THE STATE OF IOWA,**

      Appellant.

---

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

Former chief administrative law judge appeals grant of summary judgment on a claim of retaliation under the whistleblower protection statute in Iowa Code section 70A.28 and a claim of wrongful discharge in violation of public policy. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Megan Flynn and Michael J. Carroll of Coppola, McConville, Coppola, Carroll, Hockenberg & Scalise, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Jeffrey Thompson, Solicitor General, and Jeffrey C. Peterzalek, Assistant Attorney General, for appellees.

**APPEL, Justice.**

In this case, we consider wrongful-termination-of-employment and failure-to-hire claims brought by Joseph Walsh, a former chief administrative law judge of the Unemployment Insurance Appeals Bureau in Iowa Workforce Development (IWD), against the then-IWD director Teresa Wahlert and against the State. Walsh brought two claims. First, Walsh alleged retaliation under the whistleblower protection provisions of Iowa Code section 70A.28 (2014). The thrust of Walsh's whistleblower claim was that he was fired because he reached out to other government officials in an attempt to prevent the IWD director and the State from unlawfully converting his position from a merit into a nonmerit position. Walsh further alleged the defendants continued to retaliate against him when he sought other positions in state government. Walsh's second claim alleged a common law tort of wrongful termination in violation of public policy based upon the same conduct.

The defendants moved for summary judgment, which the district court granted. The district court reasoned that Walsh could not bring a claim under Iowa Code section 70A.28 because he had failed to exhaust the administrative remedies available to merit employees under Iowa Code section 8A.415. The district court also granted summary judgment on the common law public policy claim for the same reason.

Walsh appealed. For the reasons expressed below, we affirm in part and reverse in part the judgment of the district court and remand the case to the district court for further proceedings.

## I. Factual and Procedural Background.

## A. Factual Overview.

1. *Employment of Walsh by IWD.* Walsh was appointed by Governor Chet Culver to the position of Deputy Director of IWD, a nonmerit position which Walsh held from 2007 until early in January 2011. Effective January 7, 2011, Walsh became chief administrative law judge of IWD, a merit position under Iowa Code chapter 8A. As chief administrative law judge, he reported directly to the director of IWD. Governor Terry Branstad appointed Wahlert as director effective January 15, 2011.

2. *Walsh notified of reclassification of position of chief administrative law judge as confidential nonmerit employee.* About two years after Wahlert's appointment, in January 2013, the department of administrative services (DAS) sent a memorandum to all department directors regarding a change in the definition of a "confidential employee" not subject to merit employment. DAS identified the position of chief administrative law judge as a confidential employee under the new definition. On April 5, Jon Nelson, the human resources manager of IWD, delivered a letter to Walsh stating that his position would no longer be covered by the merit system. The letter advised Walsh that if he believed his position did not meet the definition of confidential employee under the new administrative rule, he could appeal the determination.

Walsh met with Nelson. Walsh claims he informed Nelson that it was a violation of the Social Security Act and guidance of the United States Department of Labor (DOL) for a chief administrative law judge to be classified as a nonmerit employee. Walsh also asserts he provided documentation to Nelson. According to Walsh, Nelson agreed to put the whole matter "on hold" while he did some further research. Specifically,

Walsh states that Nelson assured him that his status would not change without his knowledge. Walsh then left on vacation and returned on April 21, one day after the appeal deadline, believing the matter was placed on hold by Nelson. Upon his return, Walsh states that Nelson informed him on several occasions that DAS was still reviewing the matter. Nonetheless, Walsh asserts that Nelson informed him on May 21 that Walsh was no longer a merit employee and that his new status became effective when he was on vacation.

3. *Walsh's contact with United States Department of Labor and subsequent IWD review of reclassification.* Walsh claims he contacted the DOL regional office in Chicago on May 22, 2013, and was informed that any administrative law judge, whether managerial or not, must be a merit employee. Walsh maintains he opened an official "complaint" with the DOL on that date.

Walsh informed Wahlert that he had contacted the DOL and that DAS had made a serious legal error. Walsh subsequently met with Wahlert and explained in detail what he saw as an error, along with the potential federal DOL consequences. Wahlert, who was not a lawyer, directed Walsh to contact Ryan Lamb, general counsel for DAS, to discuss the matter.

Walsh asserts he met with Lamb on May 31. According to Walsh, Lamb stated that he had relied upon Wahlert's representation that Walsh did not spend much time deciding cases and that his position was "mostly managerial." Walsh advised Lamb that this was not the case. Walsh further asserts that Lamb told him the change in classification was not his legal decision but was Wahlert's policy decision. Lamb agreed to contact DOL to get further information and reassess the situation.

Walsh asserts that he talked with Lamb on the phone on June 11. According to Walsh, Lamb informed him that it was not legal and/or allowable under federal DOL guidelines to make the chief administrative law judge a nonmerit employee as long as the person in the position heard cases.

4. *Change in job description of chief administrative law judge by IWD results in more Walsh complaints.* Shortly after the June 11 conversation between Walsh and Lamb, Wahlert called Walsh into her office for a meeting with her and Nelson. At the meeting, Wahlert provided Walsh with a new job description that required Walsh to cease hearing cases. According to Walsh, Wahlert directed him to review the new job description, think about it, and give her his input.

On June 12, Walsh emailed Wahlert, expressing discomfort with the proposed change. Wahlert responded by email declaring the new job description in effect. Walsh replied that he was processing several cases and that it was impossible for him to begin working under the new job description in the midst of deciding multiple cases. Wahlert responded that Walsh could complete the cases.

Walsh emailed complaints to the office of Governor Branstad, the DOL, and members of the IWD board on June 13. Walsh sent a second email to DOL and contacted a state senator and a state representative regarding his concerns. A week later, on June 20, Wahlert sent Walsh a letter rescinding efforts to make his position nonmerit.

5. *IWD terminates Walsh through layoff.* On July 15, Walsh received a letter advising him that he had been laid off. According to Walsh, IWD staff escorted him out of the office. The layoff plan that was sent to DAS characterized the layoff as a reduction in force due to a budget shortfall. Walsh claims that prior to July 15, neither Wahlert nor

any person in the IWD's financial management bureau had informed him of any budget issue. Walsh asserts that the bureau was, in fact, under budget.

6. *Posttermination employment.* After his termination, Walsh asserts that he attempted to mitigate his damages by seeking other employment with the State. Walsh claims that Wahlert interfered with his effort to become employed at the Iowa Division of Workers' Compensation because he filed complaints against her with a state agency. On January 16, 2014, Walsh accepted the position of Deputy Workers' Compensation Commissioner in the Division of Workers' Compensation within IWD. Wahlert approved an authorization permitting Walsh to receive an advanced appointment rate.

**B. Administrative and District Court Challenges.**

1. *Administrative proceedings before the Iowa Public Employment Relations Board.* After his termination, Walsh filed a noncontract grievance and then an appeal to the Iowa Public Employment Relations Board (PERB) regarding his July 15 layoff. Walsh, however, voluntarily dismissed the appeal prior to a PERB hearing.

2. *Petition filed in district court.* On April 3, Walsh filed the petition in this matter in district court. He originally claimed that the defendants terminated his employment in violation of Iowa Code section 70A.28. In January 2015, Walsh filed an unresisted motion for leave to amend the petition to state a common law claim for wrongful termination in violation of public policy and to request reinstatement as part of the relief requested.

3. *District court ruling on motion for summary judgment.* The defendants filed a motion for summary judgment. Among other things, the defendants argued that Walsh, as a merit employee, failed to exhaust

administrative remedies with PERB under Iowa Code section 8A.415 and Iowa Administrative Code rules 11—61.1 and .2. With respect to the common law claim, defendants similarly asserted that Walsh's exclusive remedy existed under Iowa Code chapter 8A and that Walsh was not entitled to bring a common law claim outside the statutory framework. The defendants also argued that wrongful-termination claims in violation of public policy are available only for at-will employees.

Walsh resisted. He claimed that the remedy provided in Iowa Code section 70A.28 was available to merit system employees. Walsh argued that exhaustion of remedies with PERB was not required for a claim brought under section 70A.28.

Walsh further asserted that he was entitled to bring a common law claim for retaliatory discharge outside of Iowa Code section 70A.28 and without exhausting administrative remedies in Iowa Code chapter 8A. In order to bring such a common law claim for violation of public policy, Walsh asserted there was no requirement that he be an at-will employee.

The district court granted the defendants' motion for summary judgment. With respect to the statutory whistleblower claim, the district court applied a two-step test to determine if the claim was barred for failure to pursue administrative remedies under Iowa Code section 8A.415. First, the district court found that the administrative framework provided Walsh an adequate remedy. Second, the district court found that while Iowa Code section 8A.415 did not expressly require exhaustion, the statute impliedly did so by providing a mechanism for an aggrieved merit system employee to obtain an administrative remedy and to appeal final agency action to the district court. On the question of the common law claim for wrongful discharge in violation of public policy, the district court concluded that such a claim was not available to a

merit employee, but only to an at-will employee. The district court did not rule on other grounds presented in support of the motion for summary judgment.

## II. Standard of Review.

On appeal, we review a district court's ruling on a motion for summary judgment for correction of errors at law. *Fennelly v. A-1 Mach. & Tool Co.*, 728 N.W.2d 181, 185 (Iowa 2007). Summary judgment is appropriate only

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 1.981(3). "A proper grant of summary judgment depends on the legal consequences flowing from the undisputed facts or from the facts viewed most favorably toward the resisting party." *Boles v. State Farm Fire & Cas. Co.*, 494 N.W.2d 656, 657 (Iowa 1992).

## III. Discussion.

## A. Statutory Framework.

1. *Iowa's whistleblower statute.* We begin our discussion by reviewing relevant terms of Iowa's whistleblower statute, Iowa Code section 70A.28. The first sentence of subsection 2 of the statute is a 151-word linguistic jungle. Parsing of the sentence reveals the following relevant portions,

> A person shall not discharge an employee . . . as a reprisal . . . for a disclosure of any information by that employee to a member or employee of the general assembly . . . or a disclosure of information to any other public official or law enforcement agency if the employee reasonably believes the information evidences a violation of law or rule . . . .

Iowa Code § 70A.28(2).

Section 70A.28(5) declares that the above provision "may be enforced through a civil action." *Id.* § 70A.28(5). In such a civil action, a person who is found to have violated the statute is liable to an aggrieved employee "for affirmative relief including reinstatement, with or without back pay, or any other equitable relief the court deems appropriate, including attorney fees and costs." *Id.* § 70A.28(5)(*a*). An aggrieved party may also seek injunctive relief from the district court in a civil action "to prohibit the person from continuing such acts." *Id.* § 70A.28(5)(*b*).

Section 70A.28 also provides that the prohibitions in subsection 2 may be enforced through an administrative action if the employee is not a merit employee. *Id.* § 70A.28(6). Such an appeal is to be filed with the PERB within thirty calendar days of the effective date of such action. *Id.* If the PERB finds a violation of subsection 2, the PERB may reinstate the employee without loss of pay or benefits for the elapsed period, or the PERB "may provide other appropriate remedies." *Id.*

2. *Merit system remedy.* Iowa Code sections 8A.411 through 8A.418 provide the statutory framework for the merit system. Iowa Code section 8A.415 relates to grievance and discipline resolution procedures for merit employees. In general, this section provides that an aggrieved merit system employee who has been terminated may appeal the disciplinary action to the director within seven calendar days. *Id.* § 8A.415(2)(*a*). If not satisfied with the director's decision, an employee may within thirty calendar days file an appeal with the PERB. *Id.* § 8A.415(2)(*b*). If the PERB finds the disciplinary action discriminatory or for other reasons "not constituting just cause," the employee may be reinstated without loss of pay or benefits for the elapsed period, or the PERB "may provide other appropriate remedies." *Id.* A decision of the PERB constitutes a final agency action and may be challenged in district

court pursuant to the provisions of Iowa Code chapter 17A. *Id.* § 8A.415(2)(*b*); *id.* § 17A.19.

Iowa Code section 8A.417 lists a number of prohibited actions. In particular, section 8A.417(4) provides, in relevant part,

> A person shall not discharge an employee . . . as a reprisal for . . . a disclosure of any information by that employee to a member or employee of the general assembly, or for a disclosure of information to any other public official or law enforcement agency if the employee reasonably believes the information evidences a violation of law or rule . . . .

*Id.* § 8A.417(4). As is apparent, this language is nearly identical to the prohibitory language in Iowa Code section 70A.28(2).

**B. Relevant Caselaw.** We now turn to an overview of the relevant caselaw. We begin the discussion with two older cases considering whether administrative remedies must be exhausted before bringing an action directly in district court.

The first case is *Riley v. Boxa*, 542 N.W.2d 519 (Iowa 1996). In this case, the city of Cedar Rapids denied a building permit to an applicant who desired to convert an office in a building into an apartment. *Id.* at 520. Both Iowa Code section 414.10 and a local ordinance provided that a person may appeal a decision of the zoning administrator to the board of adjustment. *Id.* at 521. In *Riley*, the applicant sought to bypass the administrative process and bring an action in district court. *Id.*

In determining whether an administrative remedy must be exhausted in *Riley*, we applied a two-part test based on prior precedent. *Id.*; *see N. River Ins. v. Iowa Div. of Ins.*, 501 N.W.2d 542, 545 (Iowa 1993). First, the administrative remedy must be adequate. *Riley*, 542 N.W.2d at 521. Second, the governing statutes must expressly or impliedly indicate that the administrative remedy must be exhausted before allowing judicial review. *Id.*

The *Riley* court noted that a showing of irreparable harm from following the administrative process might provide an escape from the general requirement of exhaustion by showing that the remedy was inadequate. *Id.* at 522. The court emphasized, however, that mere monetary loss from lost rent or payment of nonrefundable administrative fees were insufficient irreparable harm to show that the administrative remedy was inadequate. *Id.*

The *Riley* court then turned to the second prong of the test, namely, whether Iowa Code section 414.10 or an applicable municipal ordinance expressly or impliedly required exhaustion. *Id.* Because the statute and ordinance contained no express requirement, the question therefore turned on whether exhaustion could be implied. *Id.* The applicant noted that under section 414.10 and the relevant city ordinance, an appeal to the district court of a decision of the board "may" be taken by an aggrieved party. *Id.* Because of the permissive use of the term "may" in connection with taking an appeal from the board, the applicant argued that the administrative remedy could be bypassed. *Id.*

The *Riley* court rejected the argument. *Id.* at 522–23. The court recognized that a statute might permit resort to the courts even though administrative remedies had not been exhausted. *Id.* at 522. In the context of the case, however, we concluded that exhaustion of the administrative remedy was required. *Id.* at 523. We cited cases standing for the proposition that the mere fact that an appeal may be taken from an administrative decision does not mean that a party does not need to exhaust administrative remedies before resorting to the courts. *Id.* at 522.

A second case cited by the parties is *Van Baale v. City of Des Moines*, 550 N.W.2d 153 (1996), *abrogated on other grounds by Godfrey*

*v. State*, 898 N.W.2d 844, 864, 872 (Iowa 2017). In *Van Baale*, a police officer was terminated from employment by the Des Moines Police Department after pleading guilty to an obstruction of justice charge and nolo contendere to a domestic abuse charge. *Id.* at 155. He contended in a civil service hearing that his discharge was disproportionately harsh given his exemplary record and that the chief of police had told him he would retain him subject only to a thirty-day suspension if he pled guilty to the charges. *Id.* The civil service commission rejected his arguments and upheld the firing. *Id.* Van Baale appealed. *Id.*

While his appeal was pending, Van Baale brought an original action in district court against the city of Des Moines and other individual defendants alleging breach of oral contract, promissory estoppel, negligence, denial of equal protection, and intentional infliction of emotional distress. *Id.* The district court dismissed the petition, holding that the civil service regime provided his exclusive remedy and preempted his common law claims. *Id.*

On appeal of the dismissal of Van Baale's common law claims, we affirmed the district court. *Id.* We cited canons of statutory construction, noting, among other things, that "[w]here the legislature has provided a comprehensive scheme for dealing with a specified kind of dispute, the statutory remedy provided is generally exclusive." *Id.* at 156 (quoting 1A C.J.S. *Actions* § 14 n.55 (1985)). The *Van Baale* court further emphasized that the civil service statute created a new right to continued employment that did not exist at common law and, as a result, it must be considered the exclusive means of challenging the arbitrariness of a civil service employee's discharge. *Id.*

While the intentional-infliction-of-emotional-distress claim asserted rights not protected by the civil service statute, we rejected Van

Baale's claim on the merits, concluding that the alleged conduct of the defendants did not rise to the "outrageous conduct" required to support the common law tort. *Id.* at 157. We also rejected Van Baale's equal protection claims on grounds other than failure to exhaust administrative remedies. *Id.*

Finally, there is a relatively recent case expressly dealing with the question of whether the availability of another adequate administrative remedy prevented a state employee from launching an action under Iowa Code section 70A.28. In *Worthington v. Kenkel*, a state employee filed a motion for injunctive relief under Iowa Code section 70A.28(5)(*b*) to prevent her employer from terminating her employment. 684 N.W.2d 228, 229, 231 (Iowa 2004). The state employer resisted, noting that the employee had another pretermination remedy under another statute. *Id.* at 230.

The *Worthington* court noted that Iowa Code chapter 70A was a "comprehensive chapter." *Id.* However, the employee also had a remedy under Iowa Code section 80.15, which provided that public employees were entitled to an administrative hearing before taking disciplinary actions resulting in loss of pay. *Id.* at 231. The district court determined that because the employee could obtain the same remedy under Iowa Code section 80.15 as under the whistleblower provisions of Iowa Code section 70A.28, the employee could not seek injunctive relief under the whistleblower statute because she had an adequate remedy at law. *Id.*

We rejected the reasoning of the district court. *Id.* at 233–34. We emphasized that Iowa Code section 70A.28 established "a public policy against retaliatory discharge of public employees and considers the violation of the policy to be a public harm." *Id.* at 233. Further, the legislature had specifically authorized an injunction in the statute. *Id.*

We thus reasoned that the existence of another available legal remedy did not prevent the employee from seeking an injunction under Iowa Code section 70A.28. *Id.* at 233–34. *Worthington* stands for the proposition that an action for an injunction under Iowa Code section 70A.28 is not ousted by the availability of an adequate administrative remedy.

### C. Analysis of Claims Presented.

1. *Whistleblower claim brought pursuant to Iowa Code section 70A.28.* We first consider whether Walsh's ability to bring a direct claim under Iowa Code section 70A.28 is precluded by the availability of an administrative remedy under Iowa Code section 8A.415. We conclude that Walsh may bring the direct claim under Iowa Code section 70A.28.

We think the question turns on whether the legislature intended the provisions of Iowa Code section 8A.415 to preempt the civil cause of action established by the legislature in Iowa Code section 70A.28. We have characterized the provisions of Iowa Code section 70A.28 as "comprehensive." *Worthington*, 684 N.W.2d at 230. And the comprehensive whistleblower statute expressly authorizes a civil remedy in subsection 5. Iowa Code § 70A.28(5).

Under our approach in *Riley*, an exhaustion requirement may arise if the available administrative remedy is adequate and if the legislature, expressly or impliedly, intended the administrative remedy to be exclusive. 542 N.W.2d at 521. But nothing in Iowa Code chapter 8A expressly requires administrative exhaustion before a whistleblower launches a civil action under Iowa Code section 70A.28. Further, we do not believe such exhaustion can be implied in light of the unequivocal legislative declaration that a whistleblower may bring a civil action to enforce Iowa Code section 70A.28. *See* Iowa Code § 70A.28(5).

Our approach leads to symmetry between merit and nonmerit whistleblowers. Under our interpretation of the comprehensive whistleblower statute, merit and nonmerit whistleblowers may elect to bring a civil action directly under Iowa Code section 70A.28(5) or pursue an administrative remedy with the PERB.

This symmetry is consistent with our understanding of the legislative history. The whistleblower statute was originally enacted in 1984. 1984 Iowa Acts ch. 1219, § 4 (codified at Iowa Code § 79.28 (1985) (now § 70A.28)). In 1989, the statute was amended to add a civil remedy. 1989 Iowa Acts ch. 124, §§ 2–3 (codified at Iowa Code § 79.28 (Supp. 1989) (now § 70A.28)). At the time the whistleblower statute was amended to add a civil remedy, there were no administrative remedies available for either merit or nonmerit state employees. Merit and nonmerit employees were treated alike regarding the availability of a civil remedy.

Iowa Code chapter 8A was enacted in 2003. 2003 Iowa Acts ch. 145 (codified at Iowa Code ch. 8A (Supp. 2003)). As originally enacted, merit employees were provided with the grievance and discipline provisions of Iowa Code section 8A.415. *Id.* § 63 (codified at Iowa Code § 8A.415). In addition, Iowa Code section 8A.417 contained a whistleblower provision strikingly similar to that contained in Iowa Code section 70A.28(2).

Notably, however, the legislature did not amend Iowa Code section 70A.28 when the merit employment provisions were enacted. Instead, in 2006, the legislature amended Iowa Code section 70A.28 to allow nonmerit employees to bring an administrative claim under Iowa Code chapter 8A as an alternative to the civil action available under Iowa Code section 70A.28. 2006 Iowa Acts, ch. 1153, § 15 (codified at Iowa Code

§ 70A.28(6) (2007)). The 2006 amendment provides the same remedial choice to merit and nonmerit employees.

Our approach is consistent with *Worthington*, 684 N.W.2d 228. The *Worthington* court considered the question of whether a merit employee could bring a civil action for injunctive relief under Iowa Code section 70A.28(2) when the employee already had a right to a pretermination hearing under another statute. *Id.* at 232. The court concluded that the merit employee could bring the civil action. *Id.* at 233–34. It would be odd to allow merit employees to bring a civil action seeking an injunction under 70A.28(2) but not allow other remedies provided by the statute.

A final issue is raised by the provisions of Iowa Code section 17A.19 (2014), which provides that

> [e]xcept as expressly provided otherwise by another statute referring to this chapter by name, the judicial review provisions of this chapter shall be the exclusive means by which a person or party . . . may seek judicial review of such agency action.

We have held that the remedies provided by Iowa Code chapter 17A are exclusive for common law remedies. *Salisbury Labs. v. Dep't of Envtl. Quality*, 276 N.W.2d 830, 835 (Iowa 1979). And statutes which merely declare that decisions of an administrative body are final are subject to challenge through judicial review of agency action. *Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 276 (Iowa 1983).

Here, however, is an unusual case in which we have a *statute* that expressly creates an independent cause of action in the alternative to administrative remedies under Iowa Code chapter 17A. While common law claims and claims under statutes that merely authorize, structure, or limit agency actions must be challenged through judicial review of

agency actions pursuant to Iowa Code chapter 17A, the remedies under *statutes* where the legislature has expressly created independent statutory causes of action in the alternative to chapter 17A-type review, judicial review of agency action under the administrative procedures act is not the exclusive means of obtaining judicial review. To hold otherwise would eliminate a choice of remedies that the legislature expressly created.

2. *Common law public policy claim.* The district court found that a wrongful-termination claim in violation of public policy cannot be brought by a merit employee and dismissed the second count of plaintiff's petition on that ground.

The defendants, however, also offered an additional ground for dismissal of the common law claim that was presented to the district court and reprised in their appellate briefing. According to the defendants, a common law cause of action for violation of public policy cannot be brought when a civil service statute protects the employee from wrongful conduct. *See Van Baale,* 550 N.W.2d at 156.

We think *Van Baale* controls here. Unlike the plaintiff's claim under Iowa Code section 70A.28, the plaintiff's wrongful-termination claim is based upon a common law theory. With respect to common law claims of oral contract, promissory estoppel, and negligence, we held in *Van Baale* that a civil service statute that provides a comprehensive framework for the resolution of such claims provides the exclusive remedy. *Id.* Walsh emphasizes that this case involves a claim for wrongful termination in violation of public policy, a claim not raised in *Van Baale.* While this case does involve a common law claim not raised in *Van Baale,* we find the case indistinguishable.

**IV.  Conclusion.**

For the above reasons, we conclude that the district court erred in dismissing the plaintiff's claim under Iowa Code section 70A.28.  We find that the district court correctly granted summary judgment in favor of defendants on the common law claim for wrongful termination in violation of public policy.  We do not address alternate grounds for summary judgment, which were not ruled upon by the district court and not argued on appeal.  We remand the case to the district court for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**